IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLEN M. MEYERS,<br>**Plaintiff,** | CIVIL ACTION |
| v. | |
| TRAVELERS INSURANCE COMPANY,<br>**Defendants.** | NO.  21-3291 |

## OPINION

In April 2018, Plaintiff Ellen M. Meyers suffered extensive injuries in a car accident in Chester County, Pennsylvania, for which she filed a number of insurance claims. The present action arises out of her dispute with Travelers Home and Marine Insurance Company ("Travelers") concerning the amount of underinsured motorist benefits she may recover under a car insurance policy issued by Travelers. The Parties filed dueling motions for summary judgment. Meyers seeks a declaratory judgment that certain language in the insurance policy violates Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. §§ 1701 *et seq.* (the "MVFRL"), and public policy. Travelers seeks a declaratory judgment that its policy is valid, enforceable, and not against public policy. For the reasons that follow, Travelers' Motion for Summary Judgment will be granted and Meyers' Motion for Summary Judgment will be denied.

   I.   FACTUAL BACKGROUND

On April 29, 2018, Meyers was driving her Ford Flex in Phoenixville Borough, Chester County, when her car was struck by another vehicle at the intersection of Church Street and Gay Street. Meyers suffered extensive injuries from the accident and filed insurance claims under six different car insurance policies.

1

Meyers first received $100,000 under the other driver's tort liability policy, but this amount did not cover her injuries. Meyers therefore sought to recover underinsured motorist ("UIM") benefits, a type of insurance coverage that becomes available when "the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 132 n.1 (Pa. 2019).

At the time of the accident, Meyers was the named insured on four insurance policies that offered UIM benefits. Her first policy, issued by Erie Insurance Exchange ("Erie"), covered her Ford Flex. Erie paid Meyers $100,000, the stacked limit of UIM coverage under the policy. Meyers also held UIM coverage under two policies issued to her by Progressive Preferred Insurance Company ("Progressive") and one issued to her by AIG Property & Casualty Company ("AIG"). Together, Progressive and AIG paid her an additional $1,500,000 in stacked UIM benefits.

Thus, the insurance contracts issued by Erie, Progressive, and AIG all provided *stacked* UIM benefits. "Stacking" is "the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to an insured," like building blocks stacked on top of one another to make a tower. *Gallagher*, 201 A.3d at 132 n.1. Meyers recovered full UIM benefits from Erie, Progressive, and AIG, adding together their coverage to recover for her losses.

But there was one more insurance policy on which Meyers could make a UIM claim—a policy that did *not* provide stacked benefits. This unstacked policy was issued by Defendant to Meyers' mother, Marie White, with whom Meyers resided at the time of the accident (the "Travelers Policy"). Travelers did not provide stacked UIM benefits because White had waived stacking.

Meyers filed a UIM claim under the Travelers Policy.[1] She expected to receive $300,000, the non-stacked UIM limit under the Policy. But Travelers took the position that Meyers was entitled to recover only $85,000, due to the operation of the Travelers Policy's "Other Insurance" clause.

The Other Insurance clause contains two subparts. As relevant to this case, the first subpart explains which insurers will have to pay first if an insured has UIM coverage under more than one policy. A "first priority" insurer is one that covers the vehicle that the insured was occupying at the time of the accident—in this case, Erie. A second priority insurer is one that provides UIM coverage to the insured as a "named insured" or "family member"—here, Progressive, AIG, and Travelers. An insured must exhaust her first priority UIM insurance before she can make any second priority claims (which Meyers did).[2]

The second subpart of the Other Insurance clause contains the operative language challenged by Meyers here. It implements the stacking waiver by explaining how much an insured can recover at the second priority level:

> The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for any one vehicle under any one policy providing coverage to you or any "family member".

In other words, Travelers' Other Insurance clause implements the stacking waiver by limiting maximum UIM coverage to the highest limit applicable under any of Meyers' second priority policies.

---

[1] The Parties do not dispute that Meyers was covered by the Travelers Policy. She appears to have been covered because she lived with and was related to White, the named insured. *See Travelers Policy, Amendment of Policy Provisions – Pennsylvania*, JA000012 (defining "insured" to include "family member"); *Travelers Policy, Definitions*, JA000033 (defining "family member" as "a person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household").

[2] This portion of the Other Insurance clause accords with Section 1733 of the MVFRL and is not challenged by Meyers.

In effect, this clause limited Meyers' maximum UIM coverage under the Travelers Policy to $500,000 (AIG's policy limit), which was the "highest applicable limit of liability for any one vehicle" under any of the second priority policies.[3] Because insurers at an equal level of priority are only responsible for their pro rata share of any claim, 75 Pa. C.S. § 1733(b), and Meyers had already recovered from the other second priority insurers, Travelers offered Meyers $85,000, its 17% pro rata share of the $500,000 maximum.

Meyers accepted payment of $85,000 as a partial release of her claim and filed a complaint in the Court of Common Pleas of Philadelphia County challenging the validity and enforceability of the Other Insurance clause. Travelers removed the suit to federal court. In November 2021, the Parties filed their summary judgment motions.

Meyers concedes that White waived stacking and she agrees that Travelers' pro rata share of second priority coverage is 17%—but she contends that setting her total second priority maximum recovery at $500,000 would violate the MVFRL's "excess coverage" regime. She seeks a declaratory judgment that she is eligible to recover up to $300,000 in UIM benefits from Travelers and that "the Other Insurance language limiting the coverage benefit is void and unenforceable" under the MVFRL and public policy. She argues that the offset should be against the total value of her claim, not the total amount of coverage. Travelers seeks a declaratory judgment that Meyers is not entitled to any additional UIM recovery and that the Other Insurance clause is valid, enforceable, and not against public policy.

The Parties' motions pose one question: May an insurer cap an insured's maximum non-stacked second priority UIM coverage at the highest liability limit applicable to any other second

---

[3] Travelers' limit for any one vehicle was $300,000 and the Progressive policies had limits per vehicle of $50,000 and $100,000, respectively.

priority insurance held by the insured?

## II. LEGAL STANDARDS

To prevail on a summary judgment motion, "the movant must show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting Fed. R. Civ. P. 56(c)). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of [the] burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

A federal court sitting in diversity applies state substantive law. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under Pennsylvania law, car insurance policies are subject to general principles of contract interpretation, and courts must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Gallagher*, 201 A.3d at 137 (quoting *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (2005)). "An insurance contract must be construed as a whole, and not in discrete units." *Luko v. Lloyd's London*, 573 A.2d 1139, 1142 (Pa. Super. 1990). The insurer "bears the burden of establishing the applicability of an exclusion in an insurance contract and exclusions are always strictly construed against the insurer and in favor of the insured." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-07 (3d Cir. 2001) (internal citation omitted).

"Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 206 (2002). "[T]he application of public policy concerns in determining the validity of an insurance exclusion is dependent upon the factual

circumstances presented in each case." *Id*. at 207.  The Supreme Court of Pennsylvania "consistently ha[s] been reluctant to invalidate a contractual provision due to public policy concerns." *Williams v. GEICO Gov't Emps. Ins. Co.*, 32 A.3d 1195, 1200 (Pa. 2011).  "[A] challenger who asserts that clear and unambiguous contract provisions . . . are void as against public policy carries a heavy burden of proof." *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110, 1122-23 (Pa. 2019).  But "insurers do not have a right to rewrite or undercut state legislation or policy," *Cosenza*, 258 F.3d at 207, and "contracts cannot alter existing laws." *Gallagher*, 201 A.3d at 137.  Therefore, "provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates." *Id.*

### III.   DISCUSSION

#### A.   The Public Policy of Excess Coverage

##### i.   *The Contours of Excess Coverage*

Meyers' main argument is that the liability cap contained in the Other Insurance clause violates the MVFRL's "excess coverage" regime.

Before examining this contention on the merits, it is necessary to discuss a few more definitions.  Under an excess coverage framework, an at-fault driver is considered "underinsured" if his or her liability coverage limits are less than the insured victim's losses. *N. River Ins. Co. v. Tabor*, 934 F.2d 461, 464 (3d Cir. 1991).  This type of coverage is called "excess" because "the injured insured's coverage [is] reckoned as 'excess' over and above the liability policy of the tortfeasor." *Id*. (citing *Conrad v. Progressive Cas. Ins. Co.*, 48 Pa. D & C.3d 71, 74 (C.C.P. Blair Cnty. 1987)).  "The victim recovers under the tortfeasor's policy up to the policy limits and then recovers under his own policy up to coverage limits or up to the total amount of damages, whichever is less." *Allwein v. Donegal Mut. Ins. Co.*, 671 A.2d 744, 747

(Pa. Super. 1996).

By contrast, under a gap coverage statute, the at-fault driver would be considered "underinsured" if his or her liability coverage limits were less than the insured victim's own policy limit. *Id*. The victim's UIM benefits only fill this "gap" between the tortfeasor's liability limits and the victim's coverage, up to the victim's policy limits or the total amount of damages, whichever is less. *Id*. In effect, "the recovery from the tortfeasor's policy is deducted from the amount recoverable under the insured's [underinsurance] policy." *Id*. (alteration in original).

For example, suppose an at-fault driver carried liability insurance of $20,000, the victim had UIM coverage of $100,000, and the victim suffered damages of $150,000. Under an excess coverage scheme, the victim could recover $20,000 from the tortfeasor and $100,000 in UIM benefits. Under a gap insurance scheme, the victim could recover $20,000 from the tortfeasor but only $80,000 in UIM benefits (the difference between the tortfeasor's coverage and the victim's coverage).

Meyers is correct that the MVFRL is an excess coverage statute, and that the Other Insurance clause is unenforceable if it violates the excess coverage scheme of the MVFRL. *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1191 (Pa. 2008).[4] But the Pennsylvania Supreme Court has not decided whether an insurance clause that implements a UIM stacking waiver by limiting maximum recovery to the highest applicable coverage limit among all second priority insurers violates the MVFRL's excess coverage mandate or some other public policy.[5]

---

[4] The MVFRL is Pennsylvania's "comprehensive legislation governing the rights and obligations of the insurance company and the insured under liability insurance policies covering motor vehicles." *Sayles*, 219 A.3d at 1124 (quoting *Erie Ins. Exch. v. Dzadony*, 39 Pa. D. & C.3d 33 (C.C.P. Allegheny Cnty. 1986)).

[5] Although a very similar "other insurance" provision came before the Pennsylvania Supreme Court in *Donovan v. State Farm Mut. Auto. Ins. Co.*, 256 A.3d 1145 (Pa. 2021), it declined to address the plaintiffs' argument that the language violated the MVFRL's policy of excess coverage. *Id.* at 1161 n.23.

It is therefore necessary to "predict[] how that court would resolve the issue." *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016) (quoting *Illinois Nat. Ins. Co. v. Wyndham Worldwide Ops., Inc.*, 653 F.3d 225, 231 (3d Cir. 2011)).  In making that prediction, it is appropriate to consider (1) any related guidance from the Pennsylvania Supreme Court; (2) decisions of intermediate state courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions.  *Id*. (quoting *Illinois Nat. Ins. Co.*, 653 F.3d at 231).[6]

Two cases from Pennsylvania higher courts provide some guidance on the contours of the MVFRL's excess coverage regime.  In *Allwein*, the Pennsylvania Superior Court held that the MVFRL codifies a policy of excess coverage.  671 A.2d at 758.  It followed that a clause that provided gap coverage by reducing the victim's UIM benefits according to the recovery received from the tortfeasor's insurer was invalid.  *Id*. at 746-47, 758.  Twelve years later, the Pennsylvania Supreme Court approved of *Allwein* in *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180 (Pa. 2008).  It agreed with *Allwein* that the MVFRL is an excess coverage statute because Section 1702 of the Act defines "underinsured motor vehicle" "in terms of the total of the injured's losses rather than the injured's own insurance coverage limits." *Generette*, 957 A.2d at 1191.[7]

---

[6] Courts may also consider the Pennsylvania Insurance Department's Guidelines.  *See Allwein*, 671 A.2d at 749.  The Parties do not point to any guidelines in particular, but Travelers asserts, and Meyers concedes, that "[t]he Travelers Policy, including the UM/UIM Endorsement, was approved by the Pennsylvania Insurance Commissioner."  The Commissioner's approval of the policy language carries no weight in this instance because the Parties have not explained its import.  *See Burstein*, 809 A.2d at 208 n.5 (declining to consider the department's position because "the parties do not offer any discussion of the Department's regulations, except to nakedly claim that the Department has approved of the policy's terms").

[7] Specifically, 75 Pa. C.S. § 1702 defines "[u]nderinsured motor vehicle" as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages."  The Travelers Policy is consistent with this statutory language, defining an "[u]nderinsured motor vehicle" as a vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for 'bodily injury' under that bond or policy to an 'insured' is not enough to pay the full amount the 'insured' is legally *entitled to recover as damages*." Travelers Policy, *Definitions*, JA000021 (emphasis added).

But the *Allwein* and the *Generette* cases were not on all fours. *Allwein* concerned the interaction between the tortfeasor's liability policy and the victim's UIM policy, a situation explicitly contemplated by Section 1702. The *Generette* Court faced a different situation: the interaction between first and second priority UIM policies. *Generette*, 957 A.2d at 1191. Section 1702, on which *Allwein* had relied, furnishes no guidance on how second priority UIM benefits should be calculated if the first priority UIM insurance does not cover the victim's losses. *Id.* at 1191. Therefore, the *Generette* Court had to look elsewhere in the statute for guidance.

It found that guidance in Section 1733, which defines the categories of first and second priority UIM coverage.[8] It held that because Section 1733 does not use "language creating gap insurance," the principle of excess insurance applies to the interaction between first and second priority UIM policies. *Id.* Accordingly, an insurance provision that reduced the victim's second priority UIM coverage by the recovery she had obtained from the first priority UIM insurer violated the policy of excess coverage. *Id.* at 1192.

In effect, *Generette* broadened the policy of excess coverage. Under *Allwein*, UIM coverage must be in excess of the tortfeasor's liability insurance. Under *Generette*, second priority UIM coverage must be in excess of first priority UIM coverage. Meyers effectively asks this Court to extend *Generette* and hold that non-stacked second priority UIM coverage must be in excess of other second priority UIM coverage.

---

[8] 75 Pa. C.S. § 1733 provides in relevant part:

> (a) General rule.--Where multiple policies apply, payment shall be made in the following order of priority:
>
>> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
>>
>> (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

The question is whether the MVFRL and relevant precedents support a prediction that the Pennsylvania Supreme Court would extend *Generette* to the facts of this case. *In re Energy Future Holdings Corp.*, 842 F.3d at 253. The answer lies at the intersection of excess coverage and stacking waivers, a terrain little explored by Pennsylvania courts. The analysis will begin with a foray into the concept of stacking.

### ii.     *Non-Stacked Excess Coverage*

Under Section 1738 of the MVFRL, UIM benefits are stacked by default, but an insured may waive this privilege in exchange for a lower premium. 75 Pa. C.S. § 1738. Section 1738(a) provides that, when stacked, UIM coverage limits "shall be the *sum of the limits* for *each* motor vehicle as to which the injured person is an insured." 75 Pa. C.S. § 1738(a) (emphasis added). Section 1738(b) provides that if an insured waives stacking, "the limits of coverage available under the policy for an insured shall be *the stated limits* for *the* motor vehicle as to which the injured person is an insured." *Id*. § 1738(b) (emphasis added).

Meyers does not dispute that stacking waivers are permitted in Pennsylvania. *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 540 (Pa. 2006). Nor does she dispute that White waived stacking or that Meyers' UIM coverage is subject to this limit on Travelers' liability. *See Pa. Nat'l Mut. Cas. Co. v. Black*, 916 A.2d 569, 579 (Pa. 2007) (insured's acceptance of UIM coverage was subject to the policy's relevant limits of liability). She challenges the language of the Other Insurance provision that implements the stacking waiver by limiting "maximum recovery under all policies in the Second priority" to an amount equal to but not exceeding "the highest applicable limit of liability for *any one vehicle* under *any one policy* providing coverage to you or any 'family member.'" *Travelers Policy*, *Other Insurance*, JA000026 (emphasis added).

The *Generette* Court rested its holding on the plain language of Section 1733, which sets out the order for priority of recovery among insurers. *Generette*, 957 A.2d at 1191. But *Generette's* reasoning is of limited help here because Section 1733 does not address the coverage limits applicable when a victim is insured under multiple policies of equal priority but has waived stacking in one. The *Generette* Court simply did not address the interaction between stacking waivers and excess coverage because the plaintiff's waiver was found to be ineffective. *Id.* at 1190; *see also Costa v. Progressive Preferred Ins. Co.*, 2016 WL 3220515, at *5 (W.D. Pa. June 10, 2016) (distinguishing *Generette* on the grounds that it did not implicate stacking); *Heller v. State Farm Ins. Cos.*, 2010 WL 1778629, at *1 (C.C.P. Venango Cnty. 2010), *aff'd by* 32 A.3d 269 (Pa. Super. 2011) (same).

Section 1738 is the only provision of the MVFRL that provides guidance on non-stacked UIM coverage limits. As explained above, it provides that the limits of coverage available under a non-stacked UIM policy are "the stated limits for the motor vehicle as to which the injured person is an insured." 75 Pa. C.S. § 1738(b). The Other Insurance clause at issue here limits recovery among several second priority insurers to the "highest applicable limit of liability for any one vehicle under any one policy." This language is a permissible way to translate Section 1738(b) because this "highest applicable limit" constitutes a "stated limit" for a "motor vehicle as to which the injured person is an insured." Nothing in the statute prevents this rendering of the Section 1738(b). The only limitation this language imposes on an insured's recovery is that the policies' limits cannot be aggregated and that is precisely how the waiver of stacking is supposed to work. To hold otherwise would stretch the policy of excess coverage policy so far that it would eradicate the MVFRL's express provision for stacking waivers—this the Court cannot do. *Winslow-Quattlebaum v. Md. Ins. Grp.*, 752 A.2d 878, 881 (Pa. 2000) ("[T]he rules

of statutory construction require that 'whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage.'" (quoting 1 Pa. C.S. § 1921(a)).

Therefore, the Other Insurance clause does not contravene Section 1738 of the MVFRL and does not offend the policy of excess coverage. Indeed, it is difficult to conceive how else a stacking waiver could be implemented. *See Costa*, 2016 WL 3220515 at *5 (finding that a provision limiting recovery to the "highest applicable limit for any one motor vehicle under any one policy in the Second priority" was "necessary to effectuate the waiver of inter-policy stacking").[9]

Indeed, the Pennsylvania Superior Court has already affirmed, albeit without opinion, a lower court decision that reached this same conclusion. In *Heller v. State Farm Ins. Cos.*, 2010 WL 1778629 (C.C.P. Venango Cnty. 2010), *aff'd by*, 32 A.3d 269 (Pa. Super. 2011), the Court of Common Pleas found that an Other Insurance clause limiting "the total amount of recovery available to an individual with multiple insurances to the maximum amount available under the plan with the highest limit" was enforceable because stacking had been validly waived. *Id*. at *1. The court held that by waiving stacking, the insured had paid a lower premium to be entitled to a maximum of UIM coverage equal to the "plan with the highest limit" and to hold otherwise would "require this Court to essentially rewrite the MVFRL." *Id*.

Similarly, Judge McVerry in the Western District of Pennsylvania held that an other

---

[9] Meyers has proposed alternative language that she contends would permit "an offset effectuating the unstacked election . . . while providing the insured the coverage for which a premium was paid" by making Travelers "responsible for 17% of the total damages, not just 17% of the total amount of coverage." But to make Travelers responsible for 17% of Meyers' damages, without regard to the applicable non-stacked coverage limit, would eradicate the stacking waiver and would not be consistent with Section 1738. Even under an excess coverage regime, the victim's recovery is limited to "coverage limits or [] the total amount of damages, whichever is less." *Allwein*, 671 A.2d at 747. When stacking has been waived, the coverage limit under the victim's policy no longer equals the "sum" of all policies under which she is an insured—the non-stacked coverage limit is instead equal to "the stated limits for the motor vehicle as to which the injured person is an insured." 75 Pa. C.S. § 1738(a)-(b).

12

insurance clause stating that "the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one motor vehicle under any one policy in the Second priority" did not offend the policy of excess coverage. Judge McVerry noted that the plaintiff had paid "a lower premium to be able to recover, at most, $100,000 in UIM benefits from *all available* UIM insurance in the second priority," not to recover the maximum UIM limit under the policy. *Costa*, 2016 WL 3220515 at *3.[10]

### iii. The "Stated Limits" Argument

Meyers attempts to show that the Other Insurance clause is inconsistent with the MVFRL by proposing a different interpretation of Section 1738(b). Specifically, she argues that "the stated limits for the motor vehicle" means "the total amount of the UIM limits for each motor vehicle."

"Total amount" is a synonym of "sum." *Sum*, Merriam-Webster, https://www.merriam-webster.com/dictionary/sum (last visited Mar. 24, 2022) (defining the noun "sum" as "the whole amount" and the verb "sum" as "to calculate the sum of : TOTAL"); *Sum*, Collins, https://www.collinsdictionary.com/dictionary/english/sum (last visited Mar. 24, 2022) (defining "sum" as "the whole amount; totality; aggregate" and as "the result obtained by adding numbers or quantities; total"). Therefore, Meyers' proposed interpretation would make Section 1738(b) redundant and duplicative of Section 1738(a), and would eliminate the MVFRL's stacking waiver provision. Such an interpretation must be rejected. *Sayles*, 219 A.3d at 1123 (a statute

---

[10] Travelers also relies on *Travelers Prop. Cas. Co. of Am. v. State Auto. Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 18319 (W.D. Pa. 2008), which applied, without analyzing, an Other Insurance clause providing that "[w]here there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy." *Id.* at *16. But this case provides no guidance here because it was applying the pro rata language of the clause in a dispute between two insurers, in a case with no valid stacking waiver, and the court did not analyze the validity of the second priority limit language. *Id.*

must be interpreted "in a manner which gives effect to all of its provisions" (citing 1 Pa. C.S. § 1921(a)); *Gallagher*, 201 A.3d at 137 (the clear language of a statute cannot be disregarded "under the pretext of pursuing its spirit." (citing 1 Pa. C.S. § 1921(b))).

Section 1738 unambiguously provides that a stacking waiver reduces the applicable coverage limit from "the sum of each policy" (Section 1738(a)) to the "stated limit" in "the" applicable policy (Section 1738(b)).[11] As a consequence of the waiver, White lost her right to recover the sum or total of the coverage limits provided by all second priority insurers; she can only claim UIM benefits up to the "stated limits for the motor vehicle as to which the injured person is an insured," which is defined in the Travelers Policy as the "highest applicable limit of liability for any one vehicle under any one policy."

### iv. The "Wholly Responsible" Argument

Meyers next looks to Section 1733 for support of her theory that she is entitled to UIM benefits "up to the total limit of coverages." As explained above, Section 1733 sets out the first and second levels of priority that govern which insurers have to pay first when multiple policies cover the same claim. It also provides that the first insurer to receive a claim "shall process and pay the claim as if *wholly responsible*," and may then recover from the other insurers their pro rata share of the total. 75 Pa. C.S. § 1733(b).[12] Meyers contends that "wholly responsible"

---

[11] The stacking waiver form mandated by Section 1738(d) confirms this understanding:

> By signing this waiver, I am *rejecting* stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the *sum of limits* for each motor vehicle insured under the policy. *Instead*, the limits of coverage that I am purchasing shall be *reduced to the limits stated in the policy*.

75 Pa. C.S. § 1738(d) (emphasis added).

[12] The Other Insurance clause in the Travelers Policy contains language consistent with Section 1733:

> If two or more policies have equal priority, the insurer against whom the claim is first made shall process

means "the value of the claim, not the limit of coverage of any one policy."

Meyers does not support this interpretation with any legal precedents, and it is not reasonable in context of the whole statute. *See Sayles*, 219 A.3d at 1123 (a statute must be interpreted "in a manner which gives effect to all of its provisions" (citing 1 Pa. C.S. § 1921(a)). Section 1738(b) defines the limits of coverage when stacking has been waived. Section 1733 only institutes the procedure by which payment should be made to an insured under certain circumstances—it does not modify the substantive limits set out in Section 1738. *See Burstein*, 809 A.2d at 209 n. 7 (holding that Section 1733 could not extend UIM coverage that had been limited by a policy exclusion); *accord Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 751 n.3 (Pa. 2002) (same). The words "wholly responsible" merely refer to the insurer's duty to pay an insured's claim in full, as though no other insurer shared that responsibility. This provision simplifies the claims process for insureds, but it does not alter Meyers' substantive entitlement to a certain amount of coverage. Section 1733 provides no grounds for a finding that the Other Insurance clause violates the MVFRL's policy of excess coverage.[13]

### B. Other Public Policy Considerations

Meyers invokes two other, interrelated public policies in support of her Motion: (1) full compensation of motor vehicle accident victims; and (2) the insured's reasonable expectation to

---

and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

[13] Meyers also argues that no provision of the MVFRL *allows* the "offset" in the Other Insurance provision. Travelers replies that just because the statute does not expressly permit a certain provision, "does not, by default, mean that a policy may not contain that provision." Travelers is correct. Only "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute." *Colbert*, 813 A.2d at 750 (quoting George J. Couch, *Couch on Insurance* 2d (Rev.ed) § 13.7 at 827 (1984)); *Gallagher*, 201 A.3d at 137 (courts are required to give effect to the clear and unambiguous language of insurance policies, but "provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates"). Meyers cited to no case law supporting her position that, where a statute is silent about the language in a given provision, that provision cannot be enforced.

receive that for which she paid.[14]

"Pennsylvania courts are unanimous that the legislative intent underlying the [MVFRL] was to establish a liberal compensatory scheme of underinsured motorist protection." *Cosenza*, 258 F.3d at 208. UIM coverage in particular "serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries." *Williams*, 32 A.3d at 1200 (quoting *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1010 (Pa. 1998)). "That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction." *Id*. (quoting *Eichelman*, 711 A.2d at 1010).

"The overriding concern powering" the Pennsylvania Supreme Court's decisions on public policy "is to ensure that both insurer and insured receive the benefit of what is statutorily required and contractually agreed-upon (consistently with statutory requirements) and nothing more." *Williams*, 32 A.3d at 1200 (quoting *Colbert*, 813 A.2d at 759); *Gallagher*, 201 A.3d at 138 ("[A]n insured should receive the coverage for which he has paid."). "Reflected in our goal to ensure that an insured receives the benefit of the contractually agreed upon coverage is our unwavering affirmation of policy exclusions where an insured is merely seeking 'gratis coverage.'" *Heller v. Pa. League of Cities & Muns.*, 32 A.3d 1213, 1222 (Pa. 2011).

Meyers contends that the $85,000 that she received from Travelers was less than what she paid for because, had there been no other policies in the household (*i.e.*, had Meyers not held UIM coverage from Progressive and AIG), she would have been able to recover up to $300,000

---

[14] Meyers also contends that the policy of cost containment underlying the MVFRL does not justify the Other Insurance clause. While cost containment is a public policy embedded in the MVFRL, *Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1266 (Pa. 2019), the courts' "role is not to weigh the benefits of these [] competing public policies, but rather to determine whether [a specific] provision violates [any] public policy." *Black*, 916 A.2d at 580. Presumably, Meyers raised these arguments because she expected Travelers to contend that the Other Insurance clause serves the policy of cost containment. Travelers did not, however, rely on that policy and neither party has argued that the Other Insurance clause violates it. Meyers' arguments defending against its application therefore need not be considered.

from Travelers, and the reduction in coverage from $300,000 to $85,000 due to the existence of other insurance was "not accompanied by a commensurate reduction in underinsured motorist premiums."

This argument is a red herring. Meyers' UIM coverage was not reduced due to the presence of other policies in the household. The existence of the Progressive and AIG policies increased her non-stacked UIM coverage under from the Travelers Policy limit of $300,000 to the highest applicable second priority limit of $500,000. The decrease in Travelers' exposure from 100% of $300,000 to 17% of $500,000 is inherent in the waiver of stacking under Section 1738, for which White paid a lower premium. Although Travelers' pro rata contribution was only 17% of the $500,000, Meyers recovered an additional $1,500,000 from Progressive and AIG (because they provided stacked coverage). In total, she recovered $1,585,000 in second priority UIM benefits, over 300% of the non-stacked limit under the Travelers Policy.

Meyers also argues that the testimony of Justin Manning, Travelers' corporate fact witness, shows that she did not receive what she paid for. Specifically, Meyers notes that White paid a premium for an unstacked single vehicle, single driver policy. When White later moved in with Meyers, she advised Travelers of her new address but Travelers did not inquire whether her household size had increased. As a result, White's policy was not updated to reflect Meyers' presence and her premium did not change. In his deposition, Manning agreed with the statement that "had Travelers known of other policies in the household, it would have charged a higher premium. But because of other policies in the household, Travelers is providing a lesser coverage benefit." On the basis of this testimony, Meyers asserts that Travelers' rate-making structure allows premiums to increase while coverage benefits decrease, "in direct contravention to the long recognized correlation between premiums and coverage."

First, Meyers' argument that White's premiums did not correlate with her UIM coverage is merely hypothetical because Travelers did *not* know that White had moved in with Meyers and never increased White's UIM coverage premium. Second, Manning's explanation for the hypothetical increase in premium belies Meyers' assertion that Travelers' premiums are not correlated with its coverage. Manning testified that the premium would be based on risk factors including the increased likelihood of an accident due to the presence of more drivers in a given household, and the new drivers' driving status and insurance coverage. Thus, any increase in premium here would have been calculated based on the risk that an additional driver and vehicle in the household presented to the insurer. Although White's UIM coverage did not increase in dollar amount, it broadened to include a new driver (Meyers) and additional vehicles. Therefore, the hypothetical increase in premium is not indicative of a miscorrelation between White's premiums and her coverage; it is just consistent with the policy that insurers should not be required to underwrite unknown risks. *Heller*, 32 A.3d at 1222.

Third, Meyers' argument oversimplifies Manning's testimony. As Travelers correctly noted in its briefs, Manning repeatedly emphasized that White's UIM coverage was subject to the remaining terms and conditions of the Travelers Policy and did not guarantee a $300,000 recovery. Specifically, Manning testified that White's UIM premium "covers a variety of potential outcomes that are all statistically considered when we set prices. . . . When we make the prices, it considers the probability of likely outcomes, how frequently those outcomes occur and the size of those outcomes." He testified that White's recovery of only $85,000 was "a possible outcome subject to the terms and conditions of the policy" and that she "was paying for the possibility of up to 300" but "[t]he situation and the terms and conditions made it such that up to 300 was not the situation she was in."

When considered in context, Manning's testimony was that rate-making is a complex process that takes into account a variety of possible outcomes and risk factors, and the insured's recovery depends on the specific situation and on the other terms and conditions of the policy. He did not testify that White paid for coverage that she never received. Meyers' argument to the contrary does not raise a genuine dispute of fact because no "reasonable trier of fact, viewing all of the record evidence, could rationally find in [her] favor." *Abington Friends Sch.*, 480 F.3d at 256.

The Other Insurance clause does not violate the public policy of compensating automobile accident victims because Meyers received full compensation up to the limit under the policy. White waived stacking and paid a lower premium; to invalidate the provision implementing that waiver would provide White with *gratis* coverage.

## IV. CONCLUSION

Upon examination of the MVFRL, Pennsylvania public policy, and relevant decisions of the Pennsylvania courts, it is predicted that the Pennsylvania Supreme Court would hold that the Other Insurance clause is valid and enforceable, and does not violate the MVFRL or public policy. Travelers' Motion for Summary Judgment will therefore be granted and Meyers' Motion for Summary Judgment will be denied.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**